*618 Robinson, J.,
concurring in part and dissenting in part.
I do not substantively disagree with the legal discussion in the majority’s opinion; we part ways only as to the majority’s ultimate determination that genuine issues of material fact remain in the case due to the fact that, according to the majority, under some set of facts, Mr. Esposito could be said to have been “getting off’ his motorcycle. The majority identifies the following as being disputed facts which it deems to be material: (1) “[t]he question of which impact caused the decedent’s fatal injuries;” and (2) “the time or distance between [the impacts].” In explanation of its conclusion relative to the issues of material fact, the rhajority states the following:
“Given [the definition of occupying in the insurance contract,] * * * if decedent died from the resulting impact with the roadway after the first collision with the trash barrel, or in such a circumstance that the second impact was so close in time and proximity as to be considered simultaneous, it could be found * * * that he was occupying his motorcycle at the time he was fatally injured. In that case * ⅜ * decedent was indeed ‘getting off his motorcycle at the time of the fatal injury.”
While I readily acknowledge that there are facts in dispute in this case, it is my opinion that those disputed facts are not material. It is my view that, regardless of which impact was fatal or how close in time the impacts took place, the decedent was not occupying his motorcycle at the time when he sustained the “bodily injury” that is referenced in the exclusion from the UM coverage provision in the Quincy Mutual policy. I am simply unable to perceive any other interpretation of the straightforward and unambiguous definition of “occupying” that is set forth in the insurance contract at issue. That definition reads as follows: “‘Occupying’ means in, upon, getting in, on, out or off.” While I intend absolutely no disrespect for the views of those who read the quoted language differently, it is very clear to me, as a matter of plain English, that the decedent, Anthony Espo-sito, cannot be said to have been “in, upon, getting in, on, out or off’ his motorcycle when he sustained the bodily injuries that are referenced in the record.
I am especially unable to agree with any suggestion that Mr. Esposito was somehow “getting * * * off’ his motorcycle at the time when he sustained a bodily injury. I find it to be highly unusual as a matter of English usage to understand the verbal expression “getting off’ as being descriptive of a completely involuntary event such as being thrown from a motorcycle as the result of a violent collision. If I stand up from the chair in my office in order to go to lunch, one can rightly describe me as “getting off’ that chair. However, if a miscreant were to, by brute strength, gradually force me out of my chair onto the floor, I do not think that most speakers of English would say that I was in the process of getting out of my chair. Perhaps once I was on the floor, one could say, however infelicitously, that I had been gotten out of my chair. But the active verbal form “getting off’ would not, in my view, accurately describe what had transpired. The verbal expression “getting off’ as applied to a person leaving a place where he or she has, up to that moment been seated or otherwise located, connotes active and volitional activity—especially in the context of leaving one place to go elsewhere.[1] It does *619 not, to my mind, properly describe what is happening when a person is involuntarily displaced from the position that he had been occupying.[2]
For these reasons, I concur with the majority’s ultimate determination to vacate the judgment of the Superior Court, but I am respectfully unable to concur with the entirety of the reasoning which led it to that determination.

. I cannot help recalling in this context the aphorism usually attributed to President Truman: "If you can't stand the heat, get out of the kitchen,” See John Bartlett, Familiar Quotations 788 (Emily Morison Beck ed., 15th ed. *619 1980). The verb “get” in that aphorism certainly implies active and volitional activity.

. Furthermore, even if a diligent search should disclose a quotation from some respectable source using the "getting off” expression in the manner accepted by the majority, such a quotation would surely be an outlier. And I would then fall back on the venerable “contra proferentem” rule in construing the definition that is set forth in the Quincy Mutual policy of insurance. See Rhode Island Hospital Trust National Bank v. McKee Brothers Oil Corp., 649 A.2d 511, 511 (R.I. 1994) (mem.) (explaining the rule of contra proferentem as meaning that "agreements are to be construed against the drafting party”).